UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-061 (RCL) |
| : | |
| : | STATUS: May 19, 2006 |
| JEROME KINARD, : | |
| : | |
| Defendant. : | |
| _____ : | |

**UNITED STATES' OPPOSITION
TO MOTION TO SEVER DEFENDANTS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to Motion to Sever Defendants And Points and Authorities In Support Thereof (Motion to Sever). In support of this opposition, the United States would show the following:

**FACTUAL BACKGROUND**

1. The defendant, Jerome Kinard is charged with Unlawful Distribution of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c).

2. There are three co-defendants who were indicted along with the defendant. Curtis Wilson is charged with Unlawful Maintenance of Premises to Manufacture, Distribute, Store and Use a Controlled Substance in violation of 21 U.S.C. § 856(a)(2) and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation 18 U.S.C. § 922(g)(1). Travis Sweet, was indicted on the charges of Unlawful Distribution of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Unlawful Possession With the Intent to Distribute 5 Grams or More of Cocaine Base and aiding

and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2. Alonzo Patrick was charged with Unlawful Possession With the Intent to Distribute 5 Grams or More of Cocaine Base and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2. The indictment arose out of incidents that occurred on January 18, 2006 and January 24, 2006.

    3. On January 18, 2006, an undercover officer with the Metropolitan Police Department, King Watts, went to Apartment #101 at 3650 Minnesota Avenue, S.E., Washington, D.C. After the undercover officer knocked on the door, it was answered by a black male – that was subsequently identified on January 24, 2006 as Jerome Kinard. Mr. Kinard then asked what did the undercover officer want. The undercover officer responded "twenty" and gave $20 in Metropolitan Police Department pre-recorded funds to Mr. Kinard in exchange for two ziplocks of a rocklike substance that later field-tested positive for cocaine. Mr. Kinard stated that he also had heroin. The undercover officer then left the area.

    4. On January 24, 2006, officers with the Metropolitan Police Department went to the same apartment to execute a search warrant. However, prior to executing the warrant, Officer Watts, again acting in an undercover capacity, went to the apartment and knocked on the door. On this occasion, Mr. Sweet opened the door. The undercover officer stated "what's up?, let me get six." Mr. Sweet then took $55 in pre-recorded funds from the undercover officer and went back into the apartment. Mr. Sweet returned a short time later with a ziplock bag that contained several smaller ziplock bags. Each of the smaller ziplocks contained a white rocklike substance. Mr. Sweet then poured six ziplock bags into the hands of the undercover officer, placed the remaining ziplocks bags in his pocket, and then went back into the apartment. The white rocklike substance later field-tested

positive for cocaine. The undercover officer then left the area.

5. Approximately ten minutes later, officers with the Metropolitan Police Department knocked on the door and executed the search warrant. When the door was not opened and the police waited a reasonable time, the police had to breach the door. Apartment 101 is a one bedroom apartment. There were a total of eight people in the apartment.

6. Upon entering the apartment, the police observed Mr. Wilson and the defendant, Mr. Kinard, running into the bedroom. After the scene was secured, the police recovered 24 ziplocks of cocaine, one box of .357 ammunition, and one 380 Davis Industries semi-automatic pistol, loaded with seven rounds, from the window area of the same bedroom.

7. When the police entered the apartment, Sergeant Curtis Sloan observed Mr. Patrick standing over the toilet bowl in the bathroom as it was flushing. Sergeant Sloan immediately went to the bathroom and observed an identification card and two plastic bags with a white rock-like substance in the toilet. Sergeant Sloan immediately retrieved the identification card and the bags from the toilet bowl. The identification card in the toilet bowl belonged to Mr. Sweet.

8. Mr. Sweet was attempting to conceal himself behind the bathroom door when Sergeant Sloan entered the bathroom. Sergeant Sloan observed a plastic ziplock bag with an apple at Mr. Sweet's feet that contained thirty-five smaller ziplocks of a white rocklike substance that later field-tested positive for cocaine. The police recovered $226 from Mr. Sweet's person in a search incident to arrest. Of that amount, there was $55 in Metropolitan Police Department funds. As Sergeant Sloan was patting down Mr. Sweet and Mr. Patrick for the officers' safety, Mr. Sweet spontaneously stated to Sergeant Sloan "Sir, can you get my ID? It is in the toilet." Sergeant Sloan indicated that he would retrieve the identification card. Mr. Sweet repeated this statement a moment later as

Sergeant Sloan was waiting for the apartment to be secured.

9.  In searching Mr. Patrick incident to his arrest, the police recovered six ziplocks of cocaine base from his right front pants pocket, $122 from his right rear pants pocket, and $24 in a wallet in his left rear pants pocket.

10.  In addition to the items mentioned heretofore in this opposition, the police went on to conduct a search of the entire apartment and recovered the following:

(a) One pound of marijuana and a 9mm Sig Sauer semi-automatic loaded with seven rounds, and a bag of ammunition from the kitchen area cabinet;

(b) On a chair in the living room there was a black jacket containing 3 identification cards, including one belonging to Mr. Wilson and one .22 caliber Phoenix Arms semi-automatic pistol loaded with eight rounds;

(c) Eighteen ecstasy pills, seventy-five ziplocks of crack cocaine, and sixty-six ziplocks of marijuana, and ziplock of unused bag from the living room table;

(d) Several cell phones from the living room table;

(e) A white pill bottle and a black box containing PCP from the freezer;

(f) Clear bag and loose bag containing marijuana in the hallway leading to the living room;

(g) Clear bag of unused ziplocks on bathroom floor;

(h) A digital scale in the hallway closet and one in the kitchen cabinet;

(i) Door locks and keys;

(j) A 9mm handgun from along side of 3650 Minnesota Avenue.

(k) Mail matter belonging to Mr. Wilson from the bedroom; and a

(l) a Northface black coat.

The rocklike substances found through the apartment and on the various occupants were determined

to be cocaine base.

11. The evidence will show that Mr. Wilson, while not a legal lessee, was in control of and occupied the apartment.

## ARGUMENT

The Motion to Sever Should Be Denied
Because The Defendants And The
Various Counts Were Properly Joined

12. Mr. Kinard's Motion to Sever contends that the charge against him is not properly joined with the other charges against the other defendants because there is no logical relationship between the charges. Motion to Sever, p. 2. The defendant is wrong. The Motion to Sever should be denied because the charges against each defendant are all part of a common scheme or plan to sell narcotics out of Apartment 101. It is well recognized that a trial court has wide discretion in resolving issue regarding severance. Zafiro v. United States, 506 U.S. 534 (1993); United States v. Gbemisola, 225 F.3d 753, 760-61 (D.C. Cir. 2000). The Court should exercise its discretion and deny the Motion to Sever.

13. Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants and charges where the charges arise from "transactions connected together or constituting part of a common scheme or plan." See United States v. Eiland, 406 F. Supp.2d 46, 49 (D.C. 2005); United States v. Gray, 292 F. Supp.2d 71, 86 (D.C. 2003). In addition, the preference in this circuit is for jointly indicted cases to be jointly tried. United States v. Eiland, 406 F. Supp.2d at 50 (citations omitted). "[J]oint trials provide the advantages of preserving judicial resources and promoting consistent verdicts." Id. See also United States v. Long, 905 F.2d 1572 (D.C. Cir.), cert. denied, 499 U.S. 948 (1990). Here, the evidence will show that the defendants were engaged in a common plan

to sell narcotics out of the apartment controlled by Mr. Wilson.  It is clearly in the interest of judicial economy and promoting consistent verdicts for one jury to hear the evidence of what happened on January 18th and 24th, 2006 and what the police found when the entered the apartment.

14.  The appellate court has stated that "a series of acts or transactions" is "two or more acts or transactions connected together or constituting parts of a common scheme or plan" where there is a logical relationship between the offenses.  United States v. Brown, 823 F.2d 591, 598 (D.C. Cir., 1987)(quotation omitted).  The conduct at issue in Apartment 101 arises from a common scheme or plan within the meaning of the circuit court's analysis because, despite the separate charges against each defendant, there clearly is a logical relationship between all the charges here in that they all involve an effort to sell narcotics from said apartment.

15.  All of the charges revolve around Apartment 101.  First, Mr. Wilson is charged with unlawful maintaining Apartment 101 to distribute and store narcotics.  In turn, Mr. Kinard and Mr. Sweet are charged with distributing crack cocaine from the front door of Apartment 101.  Mr. Sweet and Mr. Patrick are also charged with possessing 5 grams or more of crack cocaine as the police entered Apartment 101 following the sale by Mr. Sweet only minutes earlier.  In contrast to a public park or street where it could be simply coincidence that defendants are charged with conduct arising on the street, the defendants are all charged with conduct that occurred at the front door of, or inside of, a one bedroom apartment.  In sum, Apartment 101 was being used by the defendants as a storefront for selling drugs.  Therefore, there is undoubtedly a logical relationship between the charges and they are properly tried together once in front of the same jury.

16.  Moreover, it would be confusing for the jury is the charge against Mr. Kinard is severed from the rest.  Mr. Kinard is charged with distributing narcotics on January 18, 2006. However, Mr.

Kinard was not positively identified by the undercover officer until January 24, 2006 when the police execute the search warrant at Apartment 101. In addition, when the police entered the apartment, Mr. Kinard attempted to escape through the back bedroom. It is the United States' position that this reflects a consciousness of guilt of the part of Mr. Kinard. A jury is likely to be confused in the absence of testimony regarding the circumstances under which the police entered Apartment 101 and Mr. Kinard was positively identified, and how he attempted to flee from the police. Therefore, with proper instructions from the Court, it is in the interests of juridical economy and consistency for a single jury to be presented with all of the relevant testimony.

17. The defendant's argument that the charges and defendants should be severed under Rule 14 of the Criminal Rules of Criminal Procedure is equally unavailing. Mr. Kinard contends that the evidence against him is "relatively minimal" and, therefore, the charge against him should be severed to ensure a fair trial. Motion to Sever, p. 6. However, the defendant fails to explain how he would be prejudiced by a joint trial. While there are other defendants and other charges, that alone does not warrant severance. While there is undoubtedly some evidence that will apply to the other defendants, severance is not warranted where there is substantial independent evidence of each defendant's guilt. United States v. Tarantino, 846 F.2d 1384, 1398 (D.C. 1988). Here, there is ample evidence of each defendant's guilt and the Court is plainly able to instruct the jury regarding their obligation to consider each defendant's guilt independently. Zafiro v. United States, 506 U.S. at 539-41. The cases cited by the defendant do not stand for the proposition that a defendant with his or her own unique charge must be severed.

18. Likewise, there is no basis to believe that the defendant would be prejudiced by a "spillover" effect. The evidence will be that the defendant distributed narcotics to an undercover

officer on January 18th and that the other defendants committed the remaining offenses. With a proper instruction from the Court, there is no reason to believe that a jury would be unwilling or unable to consider the evidence as to the respective dates.

19. In conclusion, there is not a sufficient for this defendant to seek a severance and the motion should be denied in its entirety.

## CONCLUSION

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the Motion to Sever in its entirety.

    Respectfully,
    KENNETH L. WAINSTEIN
    United States Attorney

    By: _____
    MICHAEL T. TRUSCOTT
    ASSISTANT UNITED STATES ATTORNEY
    Member of the New York Bar
    Federal Major Crimes Section
    United States Attorney's Office
    555 Fourth Street, N.W., Room 4237
    Washington, D.C. 20530
    Phone: (202) 514-7533
    Fax: (202) 514-6010

CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing United States' Opposition to Motion To Sever Defendants was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 26th day of April, 2006, upon:

Joanne Vasco
4102 Madison Street
Hyattsville, Maryland 20781

Tony Axam, Jr.
Assistant Federal Public Defender
625 Indian Avenue, N.W., Suite 550
Washington, D.C. 20004

James L. Lyons
Kellogg, Williams & Lyons
1925 K Street, N.W., Suite 200
Washington, D.C. 20006

Diane Lepley
400 Seventh Street, N.W.
Suite 400
Washington, D.CD. 20004

                                                MICHAEL T. TRUSCOTT