UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>JEROME KINARD | Cr. No. 06-61-04 (RCL) |

**DEFENDANT KINARD'S MEMORANDUM IN AID OF SENTENCING**

Defendant Jerome Kinard, through undersigned counsel, respectfully submits this memorandum to assist the Court in determining an appropriate sentence for defendant.

**A.   THE PROPER TOTAL OFFENSE LEVEL AND THE PROPER CRIMINAL HISTORY CATEGORY**

The Presentence Investigation Report ("PSI") sets defendant's total offense level under the Federal Sentencing Guidelines at level 12.  PSI at 5, ¶ 25  The PSI places defendant in Criminal History Category I, attributing 1 criminal history point to him.  PSI at 7, ¶ 33.  We agree with both of these calculations.

With a Criminal History Category I and a total offense level of 12, defendant's guideline range is 10 to 16 months' imprisonment.  PSI at 11, ¶ 55.

**B.   DEFENDANT'S REHABILITATION EFFORTS SINCE HIS RELEASE**

On March 2, 2006, defendant was charged in a grand jury original indictment with one count of unlawful distribution of crack cocaine on January 18, 2006.  He voluntarily appeared

before this Court for arraignment on March 24, 2006,[1] and was released on personal bond, with the conditions of a daily curfew from 10:00 p.m. to 6:00 a.m., and drug testing.

Defendant's compliance with the conditions of his personal release got off to a poor start.  Defendant tested positive for marijuana on March 29, and April 5, 12, 19, and 26, 2006.  In addition, he had two minor curfew infractions.[2]

On May 5, 2006, the Court placed defendant in the High Intensity Supervision Program ("HISP").  At that time, undersigned counsel had a long talk with defendant and went over his marijuana violations.  In no uncertain terms, counsel explained to defendant the importance of building up "a good track record" while on release pending resolution of his case, and that he owed it to himself, and more importantly to his family, "to get his act together" -- stop using any form of drugs; stay out of trouble and not get arrested for any wrongdoing (even a traffic ticket); make a good faith effort to get a job; show up for drug testing when scheduled; and work with the Pretrial Services officer.

---

[1]  On January 18, 2006, defendant sold a small quantity of crack cocaine to an undercover officer at Apartment 101, located at 3650 Minnesota Avenue, S.E., Washington, D.C.  Thereafter, on January 24, 2006, the police executed a search warrant for the apartment.  Defendant and co-defendants Curtis Wilson, Alonzo Patrick, and Travis Sweet were present in the apartment at the time the warrant was executed.  They all were arrested on January 24, 2006, and the next day the charges were dismissed in Superior Court.  On March 2, 2006, the indictment in this case was returned by the grand jury.

[2]  See Pretrial Services Agency Request for Judicial Action, April 27, 2006.

Since his entry into HISP, defendant has indeed built up "a good track record."

  1. Defendant has managed to stay off drugs completely. As the PSI notes, defendant is randomly drug tested weekly. He last tested positive for drugs on April 26, 2006, and since that date all of his drug tests have returned negative. PSI at 9, ¶ 44.

  2. Defendant has not been arrested for any criminal offense.

  3. Defendant has been taking online classes to obtain his high school diploma[3] from the Penn Foster Career School[4] and hopes to get his diploma within ten months. PSI at 9, ¶ 46.

  4. Defendant has a job waiting for him with Northern Pipeline Construction Company ("NPCC") if he is not confined at sentencing.[5] As stated in the attached letter from Mr. Trudell Taylor, General Manager of NPCC, defendant has been offered a full-time position with the company as a flagger and will earn

---

[3] Defendant attended Woodson Jr. High School but dropped out when he was in the ninth grade. He attended night school for a time, but gave it up when he started "hanging out" in the streets. He never did finish the requirements for a high school diploma. PSI at 9, ¶ 45.

[4] Defendant is striving to earn an actual high school diploma through Penn Foster Career School and not simply a GED certificate. According to its web site, Penn Foster is accredited by several respected commissions. Exhibit A.

[5] During the past months, defendant put in several job applications with various organizations. He elected to be truthful on the applications about his pending charge. Despite his efforts to start working, no one wanted to hire him because of the possibility that he would be confined at sentencing.

between $10.00 and $13.50 per hour.[6]

On November 9, 2006, counsel spoke with Mr. Taylor about the job offer to defendant. Mr. Taylor confirmed that his company has a zero tolerance for drug use and that defendant's job would require random drug testing. Mr. Taylor also stated that defendant would receive health and union benefits in addition to his salary. Moreover, defendant will have the opportunity to learn certain "on-the-job" work skills and "move up" to a better paying position. Mr. Taylor said that he is fully aware of defendant's criminal case and that he is still willing to "take a chance" on defendant.

5. Defendant has not missed any dates for random drug testing and he reports to HISP as required. PSI at 9, ¶ 44.

On November 3, 2006, counsel spoke with Pretrial Services Officer Brian Hamilton, who is supervising defendant in HISP, and was informed by Mr. Hamilton that other than a few minor curfew violations,[7] defendant has been in full compliance with all of the conditions of his HISP release.

C. **AN APPROPRIATE SENTENCE IN THIS CASE**

1. **Defendant's Specific Sentencing Request**

As noted, defendant's guideline range is 10-16 months'

---

[6] Letter from General Manager Trudell Taylor, Exhibit B.

[7] Shortly after being placed in HISP, defendant was given an "electronic bracelet" to wear. According to Mr. Hamilton, since being placed on electronic monitoring, defendant has incurred only two technical curfew violations: on June 30, 2006, he was four minutes over his 10:00 p.m. curfew; and on October 4, 2006, he was two minutes late.

imprisonment, which falls in Zone C.  Under Zone C, the Court may satisfy the minimum term (10 months) by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment.  U.S.S.G. § 5C1.1(d)(1)(2).

Counsel respectfully asks the Court to grant defendant a modest Booker[8] variance and to sentence defendant to a term of probation with conditions.  Further, we ask the Court not to impose any fine.[9]

### 2. The Appropriateness of Defendant's Sentencing Request

In making a request for probation with conditions, counsel is appreciative of the seriousness of defendant's crime.  On January 18, 2006, defendant knowingly and intentionally sold crack cocaine out of an apartment to an undercover officer, albeit it a small amount.  Moreover, several days after the sale to the undercover officer, defendant was arrested in the same apartment where drugs and weapons were found. Although defendant's drug activity on January 18[10] was relatively minor

---

[8] United States v. Booker, 543 U.S. 220 (2005).

[9] As the PSI notes, defendant does not have the ability to pay a fine.  PSI at 11, ¶ 53.

[10] PSI at 4, § 12.  We note that after careful review of the circumstances of the case, the government concluded that the evidence did not show by a preponderance that any of the contraband found in the apartment on January 24, 2006, should be attributed to defendant as relevant conduct.  We also note that the Probation Office does not disagree with the government as regards this point.  PSI at 4, ¶8; PSI
(continued...)

compared with most of the drug/violence cases that come before this Court, <u>any</u> intentional sale of crack cocaine in this drug-plagued community should not be taken lightly.

Notwithstanding the objective seriousness of the crime that defendant committed, counsel respectfully submits that the legitimate interests of the community and law enforcement reflected in the sentencing goals of 18 U.S.C. § 3553(a) do not demand that defendant be sentenced to a term of imprisonment as opposed to probation with conditions.[11]  Several factors lead counsel to this conclusion.

### a. Defendant's Remorse and Acceptance of Responsibility

Defendant Kinard has accepted full responsibility for his crimes and is truly remorseful for the damage he has done to the community, to the families of his victims, and to his own family. <u>See</u> PSI at 5, ¶ 15.

### b. Lack of Need To Incapacitate Defendant By Imprisonment To Protect the Community

A sentence of imprisonment is not necessary to incapacitate the defendant so as to insure that he will not continue to sell drugs in the community.

First, defendant has been in the community on personal release for over 10 months since his crime and he has not once

---

[10](...continued)
at 11, ¶ 56.

[11]   Under § 3553(a), a sentence "<u>shall</u>" not be "<u>greater than necessary</u>" to comply with the goals of sentencing.  (Emphasis added.)

been arrested for (or to counsel's knowledge suspected of) selling drugs or committing any other criminal violation.

Second, defendant's crime was tied in with his personal drug usage and he has been drug-free since April 27, 2006.

Third, defendant has a job to go to if put on probation and does not have to resort to selling drugs to make money.

Fourth, (as counsel has explained to defendant) if convicted of selling drugs again, defendant might be sentenced as a Career Offender under the advisory guidelines or face a mandatory term of life imprisonment under federal law depending on the amount of drugs involved.

Fifth, a period of probation with the certainty of additional imprisonment for any violation thereof will give defendant a powerful and practical incentive to stay out of trouble.

Lastly, defendant has a strong and reliable emotional support system that will strengthen his commitment to never involve himself with drugs again, as confirmed by the attached letters from his mother, his sons, and his friends.[12]  These letters show that defendant has a certain basic "goodness" in him and that if given the chance, he will do the right thing and stay out of trouble.

In counsel's view, the foregoing combination is ample insurance to the Court and to the community that defendant Kinard's days of drug selling are over and will be no more.

---

[12] Exhibits C, D, and E.

### c. The Societal Benefit of a Probation Sentence with Conditions

Finally, and most importantly, sentencing defendant to probation with conditions will be consistent with the legitimate interests of the community.

As noted in the PSI, defendant is the father of Jerome, Jr., age 11, and Je'von Russell, age 9, from his relationship with Stephanie Russell. Because the mother was not taking care of the children properly, defendant brought a custody suit in the Superior Court and was awarded custody of both children on July 1, 2003. The children and defendant live together with defendant's mother at 2222 Perry Street, N.E., Washington, D.C.

In the words of defendant's mother, defendant "lives" for his children -- he is "a good father who takes good care of his children." PSI at 8, ¶ 37. As defendant's mother states in her letter, "since gaining custody of his children, Jerome has attended regular parent-teacher meetings at their school, supports them in their church activities, and participated as a team parent with the neighborhood football league."[13]

Defendant's devotion to his young sons is shown in the attached letter from his older son, Jerome Kinard, Jr.:

> I like my father living with us. He comes to our football games. Sometimes I can hear him cheering for me and my team. When I get in trouble at school he comes to the school and talks to my teachers. He tells me to get good grades and stop getting in trouble. Sometimes he takes us out to eat. We have a

---

[13] Exhibit C.

>     lot of fun.
>
>     When I grow up I want to be a lawyer.  My
>     brother wants to be a football player.  [Dad]
>     tells us we have to work hard and do not stop
>     trying to do good.
>
>     We want him to be with us.[14]

Placing defendant on probation with conditions will allow defendant to begin his employment and help support his children, both financially [15] -- as well as emotionally.

Also, allowing defendant to go on probation will enable him to continue his efforts to get his high school diploma. Moreover, a special condition of probation that defendant be monitored for drug usage and that he participate in drug counseling will further help defendant to stay drug-free as he has been since April 26, 2006.[16]

In view of the foregoing, we believe that granting defendant's specific sentencing request will truly be in the best interests of the community.

### 3. Defendant's Request for a Variance Is Consistent with the PSI Observations

From counsel's reading of the PSI, we believe that our request for a modest <u>Booker</u> variance to permit a sentence of probation with conditions is consistent with the view of the writer of the PSI.  As the PSI notes, the Court in considering

---

[14]  Exhibit D.

[15]  For the past months defendant has been relying on his mother's financial help to take care of his children.

[16]  As noted, defendant will be subject to drug testing on his job at NPCC if he is placed on probation as requested herein.

defendant's request for a variance "may wish to consider the defendant's recent success with drug abstinence, his expressed willingness to participate in ongoing counseling, his participation in vocational counseling, and his expressed commitment to financially support his two children once he is employed."  PSI at 15, ¶ 75.

Also, the PSI makes certain suggestions as regards appropriate special conditions that could be imposed as part of a probationary sentence:  "(a) substance abuse treatment and counseling as directed by the probation office, to include residential treatment if deemed necessary; (b) 50 hours of community service; (c) vocational training; and (d) educational training as currently enrolled."  PSI at 12, ¶ 63.

In sum, considering defendant's full acceptance of responsibility, his commitment to turn his life around, the lack of a need to incapacitate him from committing crimes in the future, and his excellent "track record" while in the HISP, we believe that defendant's specific sentencing request of probation with appropriate conditions is appropriate in this case.

## CONCLUSION

For all of the foregoing reasons, counsel submits that defendant Kinard's sentencing request should be granted.

          Respectfully submitted,

              /s/
          James L. Lyons (50690)
          Kellogg, Williams & Lyons
          1925 K Street, N.W., Suite 200
          Washington, D.C.  20006
          Telephone: (202) 496-0722

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading has been mailed, postage prepaid, to United States Probation Officer Tennille Losch, United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001, this 9th day of November, 2006.

```
                              _____/s/_____
                              James L. Lyons
```