UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-61-04 |
| | : | |
| | : | Sentencing: November 17, 2006 |
| JEROME KINARD, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**UNITED STATES' MOTION FOR
TWO POINT REDUCTION FOR ACCEPTANCE
OF RESPONSIBILITY
AND MEMORANDUM IN AID OF SENTENCING**

COMES NOW, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and hereby respectfully submits its Motion For Two-Point Reduction For Acceptance of Responsibility and Memorandum in Aid of Sentencing. In support thereof, the United States would respectfully showing the following:

**Motion for Reduction**

A. <u>Factual Summary Offense</u>

1. On January 18, 2006, at approximately 8:45 p.m., an undercover officer (UC) with the Metropolitan Police Department went to Apartment 101 of 3650 Minnesota Avenue, S.E., Washington, D.C.

2. When the UC knocked on the door, it was answered by a black male, who was later identified as the defendant, Jerome Kinard.

3. When the defendant asked the UC what he wanted, the UC responded by stating "twenty" and gave the defendant $20 in prerecorded Metropolitan Police Department funds. In return, the

defendant gave the UC two pink ziplocks of a white rock-like substance.

     4. This substance was submitted to the DEA for analysis and determined to be cocaine base weighing .25 grams. The defendant also advised the UC that he had heroin for sale.

     5. The defendant was arrested on January 24, 2006 when the police executed a search warrant at the same location. The UC went to the apartment after it was secured by other members of the police department and positively identified the defendant who had sold the crack cocaine on January 18, 2006.

B. <u>Defendant's Acceptance of Responsibility</u>

     6. The defendant expressed an early interest in entering into a plea. Because of the defendant's early acceptance of responsibility, also pursuant to the plea agreement, the United States was able to conserve valuable prosecution resources and the defendant is entitled to a two-point reduction for acceptance of responsibility pursuant to Section 3E1.1 of the United States Sentencing Guidelines. Pursuant to the plea agreement, the defendant is reserving his right to appeal the Court's order of June 6, 2006, in which the Court denied the Defendant's Motion to Suppress.

## **Memorandum in Aid of Sentencing**

     7. Based on the information set forth in the Presentence Investigation Report (PSR), the defendant's base offense level is governed by the fact that defendant pled guilty and accepted responsibility for unlawfully distributing cocaine base. In the event that the Court garnts the two-point reduction, the defendant's offense level will be 12. The defendant criminal history category is I. Accordingly, pursuant to the sentencing guidelines, the defendant's potential sentence is 10 to sixteen months. The government is, pursuant to the terms of the plea agreement in this case, recommending that the defendant be sentenced to 60 months.

8. According to the PSR, the defendant's criminal record goes back more nearly twenty years. In total, the defendant has six previous convictions, and they include three drug convictions. The defendant now stands before the Court to be sentenced for his seventh overall conviction and fourth conviction. This repeated criminal behavior demonstrates that the chances of rehabilitation for the defendant are poor.

9. It is important to recall that the defendant sold crack to an undercover officer from an apartment on Minnesota Avenue and, thus, made detection by law enforcement all the more difficult. The defendant's behavior show a criminal sophistication consistent with long term involvement with unlawful activities. So, while the defendant's criminal history score is only I, it is important to note that this is largely a function of the age of the convictions and the PSR writer's inability to confirm one conviction. Moreover, it should not be lost on this Court that selling crack cocaine is a very serious offense even if the defendant were a first time offender. Therefore, the Court should reject the argument for a sentencing departure made in the Defendant Kinard's Memorandum In Aid Of Sentencing (Defendant's Sentencing Memorandum) and sentence the defendant to 10 months of incarceration.

10. This sentence is supported by the factors to be considered by courts as articulated in 18 U.S.C. § 3553(a). This provision provides, in pertinent part, that when fashioning a sentence, courts should consider:

(a). The circumstances surrounding the offense and defendant's criminal history: As mentioned above, the defendant has three prior convictions for drug related offenses. This record demonstrates not only a commitment to criminal behavior on the part of the defendant.

(b). The seriousness of the offense and the need to promote respect for the law and

punishment: As mentioned above, the defendant sold narcotics from an apartment that had effectively been converted from a residence to a store where one could buy all sorts of illegal narcotics. This not only presented a danger to the community through the victimization of drug addicts, but it also created a dangerous and unhealthy environment for the other people who lived in that building. In fairness, it was not the defendant's apartment and he was not the only selling drugs from the apartment. However, the defendant's role in creating and taking advantage of this situation should not be ignored by the Court.

(c). Potential deterrence: A 10 month sentence would demonstrate to the defendant, as well as others, that there are significant consequences in the trafficking of narcotics.

(d). Protecting the public: The record amply demonstrates the need to protect the public from the defendant's criminal behavior.

(e). The needs of the rehabilitative needs of the defendant: There are none. The defendant is a well-educated individual who stands before the Court with employment skills. The PSR shows that the defendant is sophisticated enough to obtain an education as well as a job when he wants one. Nonetheless, the defendant is committed to engaging in criminal behavior. The reason is simple. The defendant chooses to engage in this behavior. A sentence of 10 months is appropriate given the defendant's choice.

<u>Defendant's Sentencing Memorandum</u>

11. The defendant argues for a downward departure based upon his "rehabilitation efforts since his release." Defendant's Sentencing Memorandum, p. 1. In sum, because the defendant only tested positive for marijuana use five times while on pretrial release, had only two curfew infractions, has not been arrested again in the past seventh months, is taking an online class from the

comfort of his own home, and has submitted some applications for jobs that he entitled to a downward departure. Defendant's Sentencing Memorandum, pp. 2-5. This argument should be rejected because it fails to meet the standard for a downward departure in this jurisdiction.

12. The Court of Appeals for the District of Columbia has consistently indicated that the type of post-arrest, pre-sentencing conduct engaged in here by the defendant is reflected in the downward departure given for acceptance of responsibility under § 3E1.1. See United States v. Tucker, 386 F.3d 273, 277-78 (D.C. Cir 2004); United States v. Rhodes, 145 F.3d 1375 (D.C. Cir. 1998); United States v. Harrington, 947 F.2d 956 (D.C. Cir. 1991). As the appellate court noted in United States v. Tucker, a departure beyond what is contemplated by § 3E1.1 would only be possible on the "rare occasion" when the "rehabilitation is so extraordinary as to suggest its presence to a degree not adequately taken into consideration by § 3E1.1. 386 F.3d at 277-78. (employment record and family responsibilities are discouraged bases for downward departure; internal citations omitted). Here, the Defendant's Sentencing Memorandum fails to demonstrates that his pre-sentencing rehabilitation has been so extraordinary as to warrant a departure from the guidelines.

13. At best, the Defendant's Sentencing Memorandum demonstrates that the defendant received what he deserved, which is to have remained on release pending trial. Indeed, given that the defendant tested positive five times for marijuana over the course of a month and violated his curfew requirements, this Court would have been within its discretion to revoke his release and hold him pending trial. Indeed, according to the memorandum, it is only when the defendant was placed in the High Intensity Supervision Program in May and his attorney explained to him that it was in the defendant's best interests to generate a good track record. Significantly, the effort to build up a good track did not come after the defendant was arrested in January, or after he was indicted and

arraigned by this Court in March, or even after his multiple violations of his conditions of release. It was only when his lawyer "had a long talk with defendant" and placed on electronic monitoring Defendant's Sentencing Memorandum, pp. 2, 4.

14. The record here does not demonstrate an "extraordinary" effort at rehabilitation. Rather, it reflects a short term effort by a defendant after "a long talk" with his lawyer.

15. Indeed, in not possessing and consuming narcotics and not getting arrested again, the defendant has merely done what tens of thousands of other citizens in this city have done for the past six months.

16. Similarly, the defendant's efforts in obtaining employment are not extraordinary. First, the defendant's memorandum fails to document how many applications he submitted or if they were submitted after consulting with his lawyer. Second, the defendant's decision to be "truthful" in submitting job applications, see footnote 5 on page 3 of the Defendant's Sentencing Memorandum, is not extraordinary. It is simply letting potential employers learn earlier what they would have learned anyway. In the case of Northern Pipeline, it is significant to note that the offer of employment came from the General Manager, Trudell Taylor, who has known the defendant for over 12 years.

17. In sum, the defendant's record is largely undocumented and shows marginal compliance with his conditions of release. The record demonstrates, instead, that the defendant heeded the advice of his lawyer and accepted responsibility for his conduct. While this conduct warrants the downward departure contemplated by 3E1.1, it does constitute an "extraordinary" effort at rehabilitation that somehow distinguishes the defendant from others who are similarly situated in the guidelines.

18. Contrary to what is suggested in the Defendant's Sentencing Memorandum, the writer of the PSR did not indicate that a downward departure outside of the guidelines would be appropriate. Indeed, the writer stated that she "found no extraordinary factors that suggest a departure." See PSR, p. 15, ¶ 73.

19. Based upon the totality of the circumstances surrounding the defendant's offense, his significant criminal history, and the defendant's mediocre record while on pretrial release, the United States respectfully recommends that the defendant be sentenced to 10 months of incarceration.

        Respectfully,
        KENNETH L. WAINSTEIN
        United States Attorney

        By: _____
        MICHAEL T. TRUSCOTT
        ASSISTANT UNITED STATES ATTORNEY
        Member of the New York Bar
        Federal Major Crimes Section
        United States Attorney's Office
        555 Fourth Street, N.W., Room 4237
        Washington, D.C. 20530
        Phone: (202) 514-7533
        Fax: (202) 514-6010